WALKER *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS — DETROIT CHARTER — SIDEWALKS —
   REPAIR OR RECONSTRUCTION.
   Section 57, chap. 7, of the charter of Detroit, as amended by
   Act No. 472, Local Acts 1901, empowering the common coun-
   cil to require landowners to build sidewalks in front of their
   property when necessary, is broad enough to include recon-
   struction, when necessary.

2. SAME—MEANING OF REPAIR.
   The provision in said section that "repairing" of sidewalks
   shall be at the expense of the city does not withdraw the power
   apparently given with respect to reconstruction, since repair-
   ing does not include reconstruction.

Appeal from Wayne; Frazer, Brooke, Mandell, Roh-
nert, and Hosmer, JJ. Submitted January 9, 1906.
(Docket No. 43.) Decided March 27, 1906.

Bill by Bryant Walker and Jessie W. Radcliffe against
the city of Detroit and William H. Maybury, commis-
sioner of public works, to enjoin an assessment against
real estate. From a decree dismissing the bill, complain-
ants appeal. Affirmed.

*H. E. Spalding,* for complainants.

*John W. McGrath,* for defendants.

MONTGOMERY, J. This is a suit to enjoin the assess-
ment against real estate of complainants of the expense
of laying a new sidewalk, which the city proposes to have
laid adjoining their property. The complainants submit
three propositions:

1. That, whether the old sidewalk is to be repaired or a
new one built, the charter amendment of 1901 puts the
expense thereof upon the city.

2. If the existing sidewalk is now beyond repair, but

could have been repaired at the time of the charter amendment of 1901, the city must lay the new walk, as the additional expense results from its default.

3. The sidewalk is now repairable and the expense of repair cannot be assessed against the property.

The facts are as follows: Complainants' property has a frontage of 368 feet on the south side of Mack avenue, between Meldrum and Beaufait avenues. The suit was tried in the circuit court in September, 1904. It appeared that the existing sidewalk, which was of plank, had been built 10 or 12 years before, that certain small repairs had been made thereon, the last apparently in 1896; that since the passage of the charter amendment, which took effect June 6, 1901, complainants received no complaint of the condition of the sidewalk and no notice to repair it, although the street both east and west of complainants' property, as well as upon the opposite side, is all built up.

In the spring of 1904 Mr. Walker, one of the complainants, received a call from a contractor who wanted to lay a cement sidewalk opposite the property. Mr. Walker then examined it and found the sidewalk in bad condition—the plank in two places had been destroyed by its being driven across, the stringers had become rotten, and some of the plank—but he judged from the appearance of the surface that about three-fifths of the planking could be relaid. Immediately afterwards, on April 28, 1904, he wrote the commissioner of public works that the sidewalk needed immediate repair, and shortly afterwards received a notice to lay a cement sidewalk, or that the commissioner of public works would do so at the expense of the property.

Two witnesses, Mr. Pocock, a builder, and Mr. Hertzman, his foreman, both familiar with the construction of sidewalks, testified for complainants on the condition of the walk. Both said that the stringers were so rotten as to be useless. Hertzman said of the planking that there was about 75 feet which could be relaid, and 42 feet that was sound on top and apparently good, but rotten at the

bottom.   Pocock said that there was 70 or 80 feet that was sound on both sides and could be relaid, and about an equal amount that was sound on top, but rotten on the under side.   Pocock said also that, from the condition in which he found the walk, he should say that it could have been repaired in 1901 so that it would not be necessary to build a new walk today.   On this point Hertzman's testimony is to the same effect.

The defendants swore three witnesses on the condition of the walk, none of whom had seen it prior to April, 1904. They all agreed that the stringers were rotten.   John Adas said that he did not believe there were 50 feet of plank fit for relaying; Adolph Nederpoon, that there were between 40 and 50 feet of good plank.   This, he said, was a rough estimate made without counting.   None of the city's witnesses testified or expressed any opinion as to the condition of the walk in 1901, or as to whether it was then in a repairable condition.   Except as to the quantity of plank fit for relaying, there was no variance in the testimony.   The bill was dismissed.

The circuit judges having found as a fact that the sidewalk was so worn out as to require the construction of a new walk, and the record fully justifying this finding, the meritorious question presented is whether the charter provisions quoted impose the burden of reconstruction of sidewalks upon the city at large.   Section 57 of chapter 7 of the charter, as amended (Act No. 472, Local Acts 1901), being section 193 of the charter, compilation of 1904, empowers the common council to require the owners or occupants of any lands in said city to build, *when necessary,* all sidewalks in said city in front of the property of such owner.   This language is broad enough to include reconstruction when necessary.   Is this power so qualified by the latter part of the section, which provides that "repairing" of sidewalks shall be at the expense of the city, as to withdraw from the council the power apparently given by the earlier part of the section ?   We think the word "repair," as used in this section was not intended to include

an entire reconstruction when found necessary, but relates to those ordinary repairs, which, without changing the character of the walk or amounting to substitution of one for another, are needed to keep the existing walk in a serviceable and safe condition. In 24 Am. & Eng. Enc. Law (2d Ed.), p. 470, it is said:

"To repair, as is ordinarily understood, means to amend; not to make a new thing, but to refit, to make good or restore an existing thing. Thus the term does not include construction, reconstruction, or rebuilding."

See, also, *Vincent* v. *Frelich*, 50 La. Ann. 382; *Levi* v. *Coyne*, 22 Ky. Law Rep. 493; *Farraher* v. *City of Keokuk*, 111 Iowa, 310; *Naye* v. *Noezel*, 50 N. J. Law, 525.

The decree is affirmed.

McALVAY, GRANT, BLAIR, and OSTRANDER, JJ., concurred.