FRED C. SMITH et al., Appellees, v. MONONA-HARRISON DRAIN-AGE DISTRICT et al., Appellants.

DRAINS: Maintenance—Scope of Continuing Jurisdiction of Board. The continuing jurisdiction of the board of supervisors and trus-tees over a *completed* drainage improvement to keep the same in *repair* by "enlarging, reopening, deepening, widening, straighten-ing, lengthening for a better outlet, or by changing or enlarging the same or by converting the same, wholly or in part, into a closed drain," while not limited to what would, technically, be deemed *repairs*, does not embrace the power *to construct new, independent and additional ditches,* or *to organize subdistricts.* (Secs. 1989-a21, 1989-a23, Code Supp., 1913; Sec. 1989-a71, Code Supplemental Supp., 1915.)

*Appeal from Monona District Court.—*W. G. SEARS, Judge.

WEDNESDAY, DECEMBER 13, 1916.

SUIT to enjoin the trustees of a drainage district from proceeding with certain proposed drainage improvements. A petition of intervention was filed, and to answer thereto, a demurrer interposed and sustained. There was an answer to the original petition, and the cause submitted on an agreed statement of facts. The defendants appeal.—*Affirmed.*

*Killpack & Northrop,* for appellants.

*Miles W. Newby, Oliver & Allen* and *Roadifer & Road-ifer,* for appellees.

LADD, J.—The Monona-Harrison Drainage District No. 1 was established in 1905, and the improvements proposed, com-pleted in 1907. In 1915, the control and supervision of the district were transferred to three trustees, elected by the owners of lands in the district. Shortly thereafter, a petition signed by many owners of land within the district was pre-

DRAINS: main-
tenance: scope
of continuing
jurisdiction
of board.

sented to the trustees. Therein it was said that the improvement constructed had not. accomplished what was designed, in that lands of the district are still ,subject to overflow and are too wet for cultivation; that ''The public benefit and utility and the public health, convenience and welfare will be promoted by still further ditching, draining, leveeing the same, and by causing the drainage improvements already existing to be enlarged, deepened, reopened, widened and straightened and straightening natural watercourses in said district;'' that such changes and improvements are essential to the efficient drainage of the lands of petitioners and others; and they prayed .that the trustees ''appoint an engineer if necessary to make necessary surveys, reports, plat, and profile of such enlargement, reopening, deepening, widening, straightening, lengthening and changing of existing improvements as may be necessary or desirable together with any additional improvements that may be required; and we ask you to take all such steps and measures as may be required or contemplated by law to make the drainage and reclamation improvements within said district serviceable and effective and such as will fully drain and reclaim the lands of said district, and we further ask that such drainage improvements herein asked for be made so far as practicable along the lines of surveys and a report recently made by a government engineer to which survey and report reference is hereby made.''

The trustees thereupon adopted a resolution, in conformity with the petition, and appointed Roy Towle, an engineer. He entered upon the work of making such survey, plats and profiles and reports to the board, and, at the time the suit was begun, was preparing reports to said board, recommending the extensive changes in the drainage improvement asked in the petition. The trustees, unless restrained, will adopt a resolution ordering the drainage improvements recommended, at a cost of more than a half million dollars. They also contemplate, if necessary, organizing subdistricts within

said drainage district, for the construction and payment of laterals. Such are the facts admitted by the demurrer to the answer to the cross-petition, or settled by the petition and answer, in connection with the stipulation of facts.

The trustees "have control and supervision of said district in the same manner and with the same powers as are conferred upon the board of supervisors for the control and supervision of drainage districts by Sections 1989-a21, 1989-a49 and 1989-a52, of the Supplement to the Code, 1907." Section 1989-a52f, Code Supp., 1913.

The two sections last mentioned relate to districts maintaining pumping stations and are not involved here. Section 1989-a21, Code Supp., 1913, provided:

"Whenever any levee or drainage district shall have been established and the improvement constructed as in this act provided, the same shall at all times be under the control and supervision of the board of supervisors and it shall be the duty of the board to keep the same in repair and for that purpose they may cause the same to be enlarged, reopened, deepened, widened, straightened or lengthened for a better outlet, and they may change or enlarge the same or cause all or any part thereof to be converted into a closed drain when considered for the best interests of the public rights affected thereby. The cost of such repairs or change shall be paid by the board from the drainage fund of said levee or drainage district, or by assessing and levying the cost of such change or repair upon the lands in the same proportion that the original expenses and cost of construction were levied and assessed, except where additional right of way is required or additional lands affected thereby, in either of which cases the board shall proceed as hereinbefore provided; provided, however, that if the repair is made necessary by the act or negligence of the owner of any land through which such improvement is constructed or by the act, or the negligence of his agent or employe, or if the same is filled and obstructed by the cattle, hogs or other stock of

such owner, employe or agent, then the cost thereof shall
be assessed and levied against the lands of such owner alone.''

The supervision and control which the supervisors may
exercise under this section are conferred on the trustees, and
the sole question in this case is whether what the trustees
did, or proposed to do, exceeded the authority conferred on
them.   There is no occasion to look elsewhere for definitions
of supervision and control, for the section of the Code Sup-
plement last quoted defines precisely what is meant thereby.
This is to be exercised first by keeping the existing improve-
ment in repair.   How is this to be done?   (1) By enlarging,
reopening, deepening, widening, straightening or lengthening
for a better outlet; (2) by changing or enlarging the same;
or (3) by converting all or any part thereof into a closed
drain.   All this has reference to the completed drains, and
we entertain no doubt that the trustees may enlarge, reopen,
deepen, widen or straighten any of these now in the district,
and they may lengthen any of these, but only for the pur-
pose of providing a better outlet.   The clause permitting them
to change or enlarge the improvement does not seem to add
anything to what precedes, and the clause permitting the
improvement to be converted into a closed drain emphasizes
the thought that the power conferred under this section is
limited to improvements previously made, and the authority
of neither the board of supervisors nor the board of trustees
extends beyond this.   On the other hand, it is plain that the
supervision and control to be exercised by either body are
not limited to what technically would be deemed making
repairs, but include doing all that is authorized in this section
to be done.   If something more is essential to protect or drain
efficiently the lands included in the district, Section 1989-a25,
Code Supp., 1913, provides for the organization of a new dis-
trict to accomplish this.   See *Kelley v. Drainage Dist.*, 158
Iowa 735.   It is enough now to say that it may not be accom-
plished through the control and supervision conferred by
the statute quoted.   Much more was contemplated by the de-

fendants as trustees in this case.   We have not before us a copy of the resolution they were about to adopt; but, as it is conceded to have been as broad as the petition filed with the trustees, it must have included "further ditching, draining and leveeing" the lands of the district, "any additional improvements that may be required," and straightening natural watercourses in said district.   They were utterly without authority to construct new or independent ditches, drains or levees or any additional improvements.   Nor had they any authority to organize subdistricts under Section 1989-a23 of Code Supp., 1913, nor to straighten natural watercourses not part of the original improvement.   The manifest design of the legislature, evidenced in the statute quoted, was to confer adequate authority to conserve all that had been done in the way of making the improvement, and, by definitely defining how this should be accomplished, to obviate any inference that additional improvements might be constructed and costs therefor incurred without organizing a district as before, and thereby affording those interested therein an opportunity to be heard.   This case illustrates the necessity of such a course; for these trustees, according to the pleadings and stipulation of facts, have embarked on an enterprise which, if executed, would impose on the landowners of the district without a hearing, a burden exceeding in amount $500,000.   The decree is broader than this opinion warrants, and, if appellants so elect, may be modified accordingly, but at appellants' costs.—*Affirmed.*

EVANS, C. J., GAYNOR and SALINGER, JJ., concur.