CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellee, v. BOARD OF SUPERVISORS OF HARRISON COUNTY et al., Appellants.

DRAINS: Establishment—Repairs—Lateral Ditch—New Improvements. Where the original drainage system of the district was completed, and put to a practical test, and it was found

that a natural, unimproved channel, relied upon to serve the purpose of the lateral or tributary to the completed ditch, does not perform that office satisfactorily, the substitution of a new ditch for such natural channel is not a *repair*, but a *new and independent improvement*, the cost of which must be paid for by assessments under a new district.    (Secs. 1989-a21, 1989-a25, Code Supp., 1913.)

*Appeal from Harrison District Court.*—T. S. STEVENS, Judge.

MAY 21, 1919.

REHEARING DENIED OCTOBER 22, 1919.

THE opinion states the case.—*Affirmed.*

*John P. Organ,* for appellants.

*James C. Davis, George E. Hise,* and *J. S. Dewell,* for appellee.

WEAVER, J.—In the year 1905, by the joint action of the boards of supervisors of Harrison and Pottawattamie Counties, a drainage ditch, known in the record as "No. 1," was duly established. Three years later, within the territory of said District No. 1, a subdistrict, known as the Boyer Subdistrict No. 1, was established and improved, and the cost thereof levied upon the real property within the subdivision, including the plaintiff's railroad right of way, which assessments have been duly paid. In the year 1913, by the joint action of said boards of supervisors, certain alleged repairs to the drainage system in the subdistrict were ordered, at the aggregate estimated cost of $8,400, for the payment of which an assessment was levied upon the real property in said territory at the flat rate of 20 per cent of the assessments which had been levied to pay for its original improvement. Included in the proposed repairs recommended by the engineer was the construction or opening of what is called the Jones Creek ditch or lateral,

cost of which was estimated at $4,400. Within the time allowed by law, the plaintiff, Chicago & Northwestern Railway Company, appeared before the supervisors, and objected to the construction of said lateral, because it was not contemplated in the original plan for the improvement of the subdistrict, and is in no sense a work of repair, but a new and independent improvement, the cost of which cannot lawfully be assessed on the property of the district in such proceeding. This objection having been overruled and the assessment ordered, plaintiff appealed to the district court, which sustained its contention, and canceled a proportionate share of the assessment against the right of way. From this ruling and judgment, the defendants have appealed.

The statute which makes provision for repairs upon a completed system of drainage, and the assessment of the cost thereof upon the property of the district (Section 1989-a21, Code Supplement, 1913), has been construed by this court as limiting the authority of the supervisors to the maintenance and repair of improvements already made, and it has been held that, if more be required than was within the original design or plan, in order to accomplish the satisfactory drainage of the district, relief must be sought, not in the authority to "repair," as found in said Section 1989-a21, but in the organization of a new district, as provided by Section 1989-a25. *Smith v. Monona-Harrison Dr. Dist.*, 178 Iowa 823; *Kelley v. Drainage District*, 158 Iowa 735.

Substantially, the one question presented by this record is whether the construction of the so-called Jones lateral may properly be called a repair of the drainage system for the improvement of which Boyer Subdistrict No. 1 was established. Stated as briefly as practicable, it appears that the main ditch of the subdistrict follows the general course of the channel of the Boyer River, inter-

secting such channel at several points. The natural flow of the stream having been diverted, the original channel has been emptied, except of such water as may escape through it from surface overflow and from small lateral streams. Such water, as we understand the record, naturally followed the course of the abandoned channel, and escaped at the next lower intersection with the river or main ditch, without the construction of any lateral ditch or other artificial aid. From the record in this respect, we infer that, in the course of time, after the original improvement of the subdistrict was completed, the abandoned channel of the Boyer became filled with silt and rubbish, to a degree which prevented or hindered the escape of these waters, and the Jones lateral, now in dispute, was ordered by the boards as a work of repair. This lateral, as reported by the engineer and approved by the supervisors, consists of a ditch along the bed of the old river channel, 4,247 feet in length, 10 feet in width at the bottom, cutting from 3 to 11 feet in depth, and making a total excavation of 23,400 cubic yards. Concededly, this lateral ditch was not a part of the original plan in the establishment of the subdistrict; but appellant contends, in substance, that this section of abandoned river channel was, in a sense, incorporated into the drainage system, and that the excavation of the new ditch along its course may properly be considered a repair, because it serves only to enlarge or increase its capacity to receive and discharge the waters which the original plan was designed to effectuate. The suggestion is plausible, but we are not prepared to adopt it. The fact that the abandoned channel does naturally bring water to the ditch, and that the ditch was planned and constructed to receive and carry it away, would not, we think, constitute such channel a part of the drainage system for which the law provides, in any sense other than would be applicable to every natural channel, watercourse, sag, or depression down

which collections of surface water make their way to the ditch. The principal purpose for which a drainage ditch is provided is to concentrate or gather into its artificial channel and carry away such water, and, if effectively planned and constructed, a combination of the natural and artificial drainage is essential. If, however, when the original drainage system of a given district has been completed, and put to practical test, it is found that a natural, unimproved channel, relied upon to serve the purposes of a lateral or tributary to the completed ditch, does not perform that office satisfactorily, the replacement or substitute of a new ditch for such natural channel is not a repair of the old improvement, but the making of a new one. This is none the less true if it be admitted, as contended by appellant, that, when the original improvement was planned and adopted, it was talked by the parties in interest, and by the supervisors and engineers, that the old Boyer channel would receive the surface waters and the flow from the small creeks naturally emptying into it, and carry them down to the main ditch. Relying upon that theory, they did not plan for any improvement of the old channel, and none was made or attempted, until the filling of the channel from natural causes indicated the need for the adoption of another plan. This was essentially a new and independent improvement. Such appears to have been the view of the trial court; and, following the construction of the statute by this court in the *Smith* case, it held that, in so far as the assessment upon plaintiff's right of way included payment for the construction of the Boyer lateral, it was invalid, and should be set aside. In this there was no error, and the decree appealed from is— *Affirmed.*

LADD, C. J., EVANS and GAYNOR, JJ., concur.