

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Andrew J. Hickey
County Auditor
Victoria County
Victoria, Texas

Dear Sir:

Opinion No. O-3204
Re: When all funds from the sale
of the original bonds have
been expended, can a drainage
District heretofore organized
use money from the maintenance
fund for the purpose of cut-
ting a new ditch connecting
two now existing ditches, and
whether the county or the
drainage district is required
to replace certain bridges.

Your request for our opinion on the hereinabove
captioned questions has been received by this department.
We quote from your letter as follows:

"Can a drainage district heretofore organized
and all funds from sale of the original bonds
expended use money from the maintenance fund
for the purpose of cutting a new ditch connect-
ing two now existing ditches?

"Heretofore, prior to August, 1939, the
former Attorney General, Honorable McCraw, ren-
dered an opinion covering the following question,
viz: Is the County or the Drainage District re-
quired to replace bridges, being bridges orig-
inally built by the drainage district at the time
of organization and accepted by the county at
that time, over ditches of the district crossing
the county road where such bridge is either worn
out or the ditch is being widened by the district?
Also in a case where a natural drain or creek
crosses the county road and such natural drain or creek

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Andrew J. Hickey, Page 2

is used by the drainage district and the district widens such natural drain which of the two, the county or district, is required to widen or replace the now existing bridge over such natural drain? If you will either render me your opinion covering the questions in this last paragraph or send me a copy of the one heretofore rendered by the former Attorney General it will be greatly appreciated."

As used in the statutes hereinafter quoted, the term "commissioners" refers to drainage commissioners and the term "court" refers to the commissioners' court,

Article 8127, Vernon's Annotated Civil Statutes, provides as follows:

"When such maps, profiles and estimates are so filed, the Court shall make an order directing the issuance of drainage bonds for such district, sufficient in amount to pay for such proposed improvements, together with all necessary actual and incidental expenses connected therewith. Such bonds shall not exceed in amount one-fourth of the assessed valuation of the real property in such district, as shown by the last annual assessment thereof made for said district, nor exceeding the amounts specified in said order and notice of election."

Article 8134, Vernon's Annotated Civil Statutes, reads as follows:

"When the bonds have been registered, the county judge shall, under the direction of the Court, advertise and sell said bonds on the best terms and for the best price possible, not less than their par value and accrued interest. All money received from such sale shall be turned over as received by the county judge to the county treasurer, and shall be by him placed to the credit of the district in the construction and maintenance fund thereof. The county judge shall be allowed one-half of one per cent of the amount received on the sale of any bonds sold by him in full payment of his services in that behalf."

Honorable Andrew J. Hickey, Page 3


Articles 8162, 8163 and 8164, Vernon's Annotated Civil Statutes, provide as follows:

"Art. 8162. If there remains a surplus of money or bonds to the credit of the district, after the final completion of all improvements contracted for, including bridges and culverts, and after the payment of all expenses incurred hereunder, the commissioners may cause the district engineer to make a detailed report of any additional or supplemental drains, ditches or levees or other character of surface drainage improvements, including tile drainage, that may be needed in such district. Such report shall be made and acted upon in the manner prescribed for the initial report of the engineer before the issuance of bonds. The estimated cost of such additional improvements shall in no case exceed the amount of surplus money or bonds to the credit of the district.

"Art. 8163. After the approval of the engineer's report or as modified by the Court, the Court shall order an election to be held within the district at the earliest possible legal time. The only proposition presented at such election shall be 'For the additional improvements and payment therefor out of the moneys on hand;' and 'Against the additional improvements and payment therefor out of the moneys on hand.' A majority vote shall be necessary to carry such proposition. Notice of such election briefly reciting the character and scope of such proposed improvements, stating the estimated cost of same, and stating the time and places of holding such election shall be given, election officers, appointed, returns made and canvassed, and the result declared, in like manner as provided for the original election.

"Art. 8164. The provisions of this law relative to the letting of contracts and the construction of improvements thereunder and the authority of the drainage commissioners and the Court in connection therewith, shall apply

Honorable Andrew J. Hickey, Page 4

to the construction of such additional improve-
ments and payment therefor in so far as appli-
cable."

The language used in the articles quoted, supra,
leads us to the conclusion that only such funds, to the credit
of the district, as were derived from the sale of bonds may
be used in payment for improvements, whether original or
additional.

Articles 8137 and 8138, Vernon's Annotated Civil
Statutes, provide as follows:

"Art. 8137. The commissioners shall annual-
ly, on or before the first day of July, pre-
pare and file with the Court a full detailed
report of the condition of the improvements
theretofore made in the district, with an esti-
mate of the probable cost of maintenance and
needed repairs during the ensuing year, to-
gether with an inventory of all funds, effects,
property and accounts belonging to such dis-
trict, and a list of all lawful demands, debts
and obligations against the district. Such
report shall be verified by the commissioners
and carefully investigated and considered by
the Court before any levy of taxes is made
under the succeeding article.

"Art. 8138. At the same time that taxes
are levied to meet the bonded indebtedness, the
Court shall cause to be assessed and collected
taxes upon all property in the district, whe-
ther real, personal or otherwise, sufficient to
maintain, keep in repair, and to preserve the
improvements in the district, and to pay all
legal, just and lawful debts, demands and
obligations against such district. Such levy
shall never, in any one year, exceed one-half
of one per cent of the total assessed valuation
of such district for such year. Such taxes
when so collected shall be placed in the con-
struction and maintenance fund."

Article 8139, Vernon's Annotated Civil Statutes,
reads as follows:

"If any bonds remain which are not requir-
ed for the completion of the improvements made
or to be made, then with the consent of the

Honorable Andrew J. Hickey, Page 5

Court duly made of public record, such bonds or a part thereof may be sold and the proceeds from the sale thereof shall be placed in the maintenance and construction fund and used for the purposes stated in the preceding article."

The use of the words "improvements made or to be made" in Article 8139, supra, likewise, indicates an intention on the part of the Legislature to use the proceeds of the sale of the bonds for improvements and "if any bonds remain which are not required for the completion of the improvements made or to be made," they may be sold and the proceeds used for maintenance purposes.

We believe that the use of the words "to the credit of the district in the construction and maintenance fund thereof" in Article 8134, supra, and "to the credit of the district" and "surplus money or bonds to the credit of the district", in Article 8162, supra, places such funds in a different category in so far as the purpose for which they may be expended is concerned, from which those same funds will be after they have been placed "in the maintenance and construction fund", under Article 8139, supra.

Article 8150, Vernon's Annotated Civil Statutes, provides as follows:

"After the establishment of a district, all legal and just expenses, debts and obligations other than bonds and interest thereon arising and created after the filing of the original petition and necessarily incurred in the creation, establishing, operation and maintenance of such district, shall be paid out of the 'Construction and Maintenance Fund,' of such district which shall consist of all money, effects, property and proceeds received by such district from all sources, except that portion of the tax collections which shall be necessary to pay the interest on the bonded indebtedness as it falls due and the payment of the bonds at maturity. Said tax collections shall be placed in and paid out of the 'Interest and Sinking Fund' of such district for such purposes, and such fund may be invested for the benefit of the district in such bonds

Honorable Andrew J. Hickey, Page 6

and securities as the Attorney General may
approve. Such funds shall be held for the
respective purposes for which they were
created, and if money is improperly paid out
of either, the Court may cause the county
treasurer to make the necessary transfer
of such amount in the district accounts,
to restore the fund so improperly used."

In our opinion the costs of additional improve-
ments are not such "legal and just expenses, debts and ob-
ligations other than bonds and interest thereon arising and
created after the filing of the original petition and nec-
essarily incurred in the creation, establishing, operation
and maintenance of such district", as Article 8150, supra,
provides shall be paid out of the construction and main-
tenance fund.

Under the provisions of Article 8163, supra, addi-
tional improvements may not be constructed without first
submitting the question to a vote by the taxpayers. Debts
for the maintenance, repair and preservation of the improve-
ments, on the other hand, may be incurred by the drainage
district without first submitting the question to the voters,
and the commissioners' court is authorized (Articles 8137,
8138, supra) to levy taxes for the payment of such drain-
age district debts.

The answer to the first question submitted by you
depends upon the determination of whether the cutting of the
proposed new ditch amounts to "additional improvements", under
Articles 8162 and 8163, supra, or whether such new ditch is
necessary "to maintain, keep in repair, and to preserve the
improvements in the district" under Article 8138, supra. If
the former, your question is answered in the negative; if
the latter, the answer is in the affirmative.

We have been unable to find any Texas cases in-
volving the direct question of whether certain work done on
an established drainage district is to be classed as "addi-
tional improvements" or "to maintain, keep in repair, and
to preserve the improvements in the district".

In the case of Davis Holding Corp., et al v. Wil-
cox, Town Collector of Taxes, 153 Atl. 169, 112 Conn. 543,
the court held that the word "maintenance" within a statute

Honorable Andrew J. Hickey, Page 7

providing for the construction and maintenance of a sewer system, was not limited to the mere repair of the disposal works or the preservation in the condition in which they were left after original construction, but that certain improvements to the disposal plant were included within it. We quote from the court's opinion as follows:

"The word 'maintain' has no precise legal significance in the construction of statutes, its meaning varying with the statutes in which it is used, the subject matter of the law, and the purpose to be accomplished by it."

In the case of Smith v. Grayson County, 18 Tex. Civ. App. 153, 44 S. W. 921, the court, construing the meaning of the word "maintenance" in Article 8, Section 9 of Vernon's Annotated Texas Constitution, authorizing the Legislature to pass local laws for the maintenance of public roads and highways, used the following language:

"It is insisted, however, that this clause of the constitution limits the purposes for which local laws may be passed to the maintenance of roads already constructed, and would not authorize the passage of a statute creating a road system. We do not think the word 'maintenance', as used in this section of the constitution, was intended to be used in this restricted sense. By the use of the words 'maintenance of public roads and highways,' the framers of the constitution had reference to maintaining a system of public roads and highways, which would include all the necessary powers to provide and keep up a system of highways. Brown v. Graham, 58 Tex. 254."

In the case of Kelleher v. Joint Drainage District No. 18, Greene County, et al, 249 N. W. 401, 216 Iowa 348, the Supreme Court of Iowa had before it the question of whether certain work done on a drainage district was repair (under Section 7556 of the 1931 Iowa code, not requiring notice to property owners) or original construction (under Section 7554 of said code, requiring notice to property owners). We quote from the opinion as follows:

Honorable Andrew J. Hickey, Page 8

"In his testimony the engineer plainly stated that he intended the new as a substitution for, and not a repair of, the old tile line. On the appellee's land the new tile line varies a distance of fifty rods from the old tile line. The cost of the new system is many times more than that of the original construction. Frequently during their examination in the district court the engineer and the members of the board frankly confessed that the original construction was inadequate to drain the lands within the district, and that the new improvement was a substitution therefor, as distinguished from a repair thereof! While the cost of the new improvement is not conclusive in determining whether the work is a repair or not, yet it may be considered on that subject. For instance, it was said in Bloomquist v. Board of Supervisors of Hardin County, 188 Iowa, 994, reading on page 1001, 177 N. W. 95, 98; 'Indeed we should be reluctant to hold in any case that an expenditure of 190 per cent. of the cost of an original improvement should be deemed a mere repair thereof.' In the case at bar, the cost of the new improvement is more than 190 per cent. of the expense of the original work.

"When considering the applicability of the two sections of the Code now under consideration, this court said, in Walker v. Joint Drainage District, 197 Iowa, 351, supra, reading on pages 354, 355, and 356, 197 N. W. 72, 73; 'The "repair" that became necessary because of the condition was not a "repair" of the physical improvement as made upon the land, but it was a "repair" of the plan of the engineer who designed the original improvement which was adopted by the board of supervisors. In other words, the original plan for the drainage of this tract of land was inadequate and insufficient to do the work. * * * There is no attempt at replacement, or any repair, modification, or change of any kind in the original tile as constructed. As before stated, the thing that is repaired is the

Honorable Andrew J. Hickey, Page 9

plan, and not the constructed system. To re-
pair means "to restore to a sound or good
condition after decay, injury, dilapidation,
or partial destruction." * * * The construc-
tion of this new tile drain 2,100 feet in
length, some 900 feet distant from the original
tile, and nearly parallel thereto, and fur-
nishing drainage for an entirely new area of
land not drained by the original tile, is not
in any proper sense a "repair" of the original
construction. * * * The word "repair" is not
of sufficient elasticity to permit extension
to include work of this character.'

"The enlarging, reopening, deepending,
widening, straightening, lengthening, or the
changing of location for better service, con-
templated by section 7556, is to be a repair
of an existing system and not the substitution
of a new and different work therefor. As the
board of supervisors did in Walker v. Joint
Drainage District, 197 Iowa, 351, 197 N. W.
72, supra, the joint board here changed the
system because the original plan was inade-
quate. If the original levee, drainage district,
or improvement is insufficient to properly
drain the lands, the procedure should be, not
under 7556, but under 7554 of the 1931 Code.
This is true because it is necessary to estab-
lish a new and original levee and drainage dis-
trict that will be adequate to care for the
waters on the land. A new plan, in other
words, is necessary under these circumstances.
When, then, a new plan is necessary, the
procedure should be under section 7554 of the
Code, rather than under section 7556. Section
7556 does not contemplate a new plan and a
new system, but rather it presupposes the re-
pair of the work under an old plan and an old
system. Consequently, because the joint board
of supervisors in the case at bar adopted a
new plan and a new system, they illegally pro-
ceeded under section 7556. They should have
proceeded under section 7554 above mentioned.
The property owners in the case at bar were

Honorable Andrew J. Hickey, Page 10

entitled to notice, as contemplated by the
last-named section. . . . "

In the case of Hidalgo County Drainage District
No. 1, et al v. International Creosoting & Construction Co.,
(Civ. App.) 54 S. W. (2d) 861, writ refused, suit was in-
stituted by appellee against the drainage district and Hidal-
go County, to recover on certain warrants issued by said
drainage district to the George Construction Company to
evidence the indebtedness due said construction company for
certain labor and material furnished to the district for
certain improvements and repairs on the system. Appellees
were purchasers in good faith of the warrants. In affirm-
ing the judgment of the trial court in favor of appellees
for the full sum of the warrants, Chief Justice Fly of the
San Antonio Court, uses the following language in the opin-
ion:

"The work was furnished for repairs
and improvements on an existing district,
and the materials were furnished and used for
those objects named in the contract. A vote
of the taxpayers of the district was not es-
sential to the validity of the contracts
made by and between the parties. It was
never contemplated by law that every time
repairs and improvements become necessary in
a drainage district a vote must be held. The
authorities of the district were fully au-
thorized to do all they did in the premises.
The commissioners' court has full authority
by article 8138, Revised Statutes, to provide
for the payment of the debts evidenced by
the warrants. The third and fourth proposi-
tions are based on bare and unreasonable
technicalities, and should not meet with
favor at the hands of a court of justice.
The fifth proposition is also overruled.

"The supplemental contract was made in
the interest of the district, and it received
the benefits from it. The sixth proposition
is overruled.

"This court sees no necessity for enter-
ing into a discussion of the law permitting

Honorable Andrew J. Hickey, Page 11

> the organization of the district, and no stat-
> ute or decision has been cited that tends to
> destroy the right of the district to issue war-
> rants for debts incurred for repairs made on
> the property of the district. . . . "

It is not clear from the Hidalgo County Drainage District case, supra, what the "improvements" consisted of in said case. On page 861 of the opinion in said case, it is stated that the work was ". . . for certain improvements and repairs on the system . . ." Likewise, the opinion does not say under what circumstances the law contemplated that a vote must be had. It merely states that a vote was not contemplated "every time repairs and improvements became necessary." In our opinion, the word "improvement" as used in the Texas case, supra, is used as meaning repair rather than additional improvement.

Whether certain work done on an established drainage district is "additional improvement" of said drainage district, within the meaning of Article 8162, supra, or merely "to maintain, keep in repair, and to preserve the improvements in the district" within the meaning of Article 8138, supra, is a question of fact to be decided by the drainage authorities from all the facts and circumstances in the particular case.

From the language used in the Hidalgo County Drainage District case, supra, and from the other authorities discussed herein, it is our opinion that proposed work on an established drainage district that is reasonably necessary to make such drainage system do the work that it was contemplated that it should do under the plan or system originally adopted, and which does not materially alter, add to, or extend the scope of the general plan or system, comes within the meaning of the term "to maintain, keep in repair, and to preserve the improvements in the district", in Article 8138, supra, and may be paid for out of the construction and maintenance fund. If, on the other hand, such proposed work is not reasonably limited to the purposes just mentioned, it would constitute "additional improvements" within the meaning of Articles 8162-8164, supra, requiring a vote by the taxpayers and to be paid for only by bonds or funds derived from the sale of the bonds remaining to the credit of the district.

Honorable Andrew J. Hickey, Page 12

In answer to your first question, therefore, you are respectfully advised that it is the opinion of this department that if, in the judgment of the drainage authorities, the cutting of the new ditch, under the facts submitted, does not go so far as to be "additional improvements" under the test mentioned in the preceding paragraph, the cost thereof may be paid for out of the construction and maintenance fund. If, on the other hand, it is found that the cutting of such new ditch constitutes "additional improvements", when tested as aforesaid, the cost thereof could not legally be paid out of the construction and maintenance fund, because all funds from the sale of the bonds have been expended and hence no surplus remains to the credit of the district as required by Article 8162, supra.

In answer to the first question considered in paragraph 2 of your letter, you are respectfully advised that it is the opinion of this department that it is the duty of the drainage district to replace bridges originally built by the drainage district over ditches of the district crossing the county road, such bridges being now either worn out or inadequate because of the widening of the ditch by the district. We are enclosing a copy of our opinion No. O-1018 which deals with this question. We believe that it is the opinion you refer to in your letter.

From our understanding of your letter, the only substantial difference between the first and second questions in the second paragraph of your letter, is that in the latter question the inadequate bridge crosses a "natural" drain instead of a drain or ditch constructed by the district.

Under the facts submitted, it is our opinion that the liability of the drainage district is the same with respect to the building and maintaining of bridges over both types of drains.

Drainage districts are authorized and encouraged in the interest of good husbandry, of the public health, of the advancement of the general upbuilding of the country, and the rescuing of waste portions of land and their being made to serve useful and profitable purposes. Jefferson County Drainage District v. McFaddin, (Civ. App.) 291 S. W. 322, affirmed Com. of App., 4 S. W. (2d) 33.

Honorable Andrew J. Hickey, Page 13

Article 8106, Vernon's Annotated Civil Statutes, reads as follows:

"The engineer shall, within such time as may be prescribed by the Court, go upon the land proposed to be drained and protected by levees, and make a careful survey thereof, and from such survey make preliminary plans, locating approximately the necessary canals, drains, ditches, laterals and levees, and shall designate the streams and bayous necessary to be cleaned, deepened and straightened, and estimate the costs thereof in detail as to each improvement contemplated, and shall also estimate the probable cost of maintaining same per year, and shall at once make a detailed report of his work to the Court." (Underscoring ours.)

Bearing in mind the purpose and nature of drainage districts, we believe it is clear from the language used under Article 8106, supra, that the words "the necessary . . . . drains, . . ." were contemplated to include any natural drains or creek, which could be utilized in affecting a proper drainage system.

Article 8153, Vernon's Annotated Civil Statutes, reads as follows:

"All canals, drains, ditches and levees made and water courses cleaned or constructed by any district shall be the public property of such district, and every person owning land within said district shall have the right to drain into one or more of such public drains, and at his own expense to make drains according to the natural slope of the land through such other lands as intervene between his land and the nearest public drain or water-course, or along a public highway. Such owner shall first notify the commissioners of his desire to make such drain through another's property or along a public highway, and such commissioners shall go upon the premises and act as a jury of view and determine the place where such drain may be made." (Underscoring ours.)

In your letter you state that the natural drain or creek has been used by the district and that the district has widened such natural drain. In our opinion, the "using and widening" of the natural drain or creek by the district takes such drain out of the class of natural drains and places it into the category of "drains, . . . made . . . by any district . . ." within Article 8173, and hence becomes "the property of the district", in the same manner as any other drain or ditch made or constructed by the district.

"Natural condition of the land" is used to indicate that the condition of land has not been changed by any act of a human being. Restatement, Torts, Sections 363b and 840.

Article 8161, Vernon's Annotated Civil Statutes, provides as follows:

"The commissioners are authorized and required to build all necessary bridges and culverts across and over all canals, drains, ditches, laterals and levees constructed hereunder whenever the same cross a county or public road, and shall pay for same out of the drainage fund."

In answer to the second question in paragraph 2 of your letter, you are respectfully advised that it is the opinion of this department, under the facts stated, that the drainage district is liable for the replacing of the now existing bridge.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By _Edgar Pfeil_
Edgar Pfeil
Assistant

APPROVED APR 9, 1941

EP:GO

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN