WILLIAM BREIHOLZ et al., Appellants, v. BOARD OF SUPERVISORS OF POCAHONTAS COUNTY et al., Appellees.

DRAINS: Establishment and Maintenance—Repairs—Notice. Where
1   a drainage district has been fully organized, and a system of drainage has been established and completed, the board of supervisors may let the contract for cleaning and repairing ditches, although provision is also made for increasing the depth in certain places, and increasing the slope of the banks in others, without notice to the property owners, or advertisement or competitive bids. Sec. 1989-a21, Code Supp., 1913, imposes no duty of giving notice in advance of each separate work or repair, or to advertise the same for competitive bids, except as implied in the proviso at the end of the section, seemingly recognizing such a necessity where additional right of way is to be taken, which reservation is sufficient to obviate any possible objection on constitutional grounds.

DRAINS: Establishment and Maintenance—Enlarging Ditch. Sec.
2   1989-a11, Code Supp., 1913, is expressly limited to changes sought to be effected in dimensions and location of drainage ditch after district is established, and before its completion, and does not in any manner supersede Sec. 1989-a21, Code Supp., 1913, or limit or control the authority vested in the supervisors under that section to enlarge, re-open, deepen, widen and straighten the ditch.

DRAINS: Assessment of Benefits—Objections. Evidence reviewed,
3   and objection that all the lands in the drainage district were not benefited alike, and therefore the assessments were inequitable, held to be without merit.

DRAINS: Assessment of Benefits—Presumptions. A drainage sys-
4   tem, once established and completed, is an improvement from which the district as a whole is presumed to receive a benefit.

Appeal from Pocahontas District Court.—D. F. COYLE,
Judge.

July 10, 1919.

ACTION in equity for the cancellation of assessments levied upon the lands of the plaintiffs for the alleged expense or cost of maintenance, cleaning. and repairing of certain drainage ditches. On trial, the district court dismissed the bill, and plaintiffs appeal.—*Affirmed.*

*T. F. Lynch* and *Kenyon, Kelleher & Hanson,* for appellants.

*F. C. Gilchrist* and *Healy & Faville,* for appellees.

WEAVER, J.—Much is said in the pleadings that is not necessary to an understanding of the issues in this case. Briefly stated, it is conceded, or shown without controversy, that, in the year 1907, a drainage district known as "No. 29" was established in Pocahontas County, and the district was improved by the construction of a drainage system composed of a certain main, with other laterals or branches. While some of these drains were of the closed or tile pattern, a large proportion thereof was open. In the year 1910, the engineer in charge of the district reported to the board of supervisors that a certain portion of the open main ditch. and one or more of the branches, had become filled with silt or sediment, to an extent making it necessary or proper to clean the obstructed channels. He estimated the necessary excavation at 5,500 yards. Nothing seems to have been done with reference to this report during that year, or until March, 1911, when the engineer brought up the subject anew, but this time recommending a more extensive cleaning and repairing of the open ditches in the district, and estimating the entire excavation at about 4,500 cubic yards. Acting on this report and approving it, the board voted to employ S. F. Hiatt to do the work, being approximately 7,317 yards, at 30 cents, in the upper part of the district, 36,104 yards. at 28 cents, in the lower part, and

936 yards in what is known as "Branch A." A contract to this effect was then made between the county auditor and Hiatt. The letting of the contract was not advertised, and was not offered for bids. Proceeding under the contract, Hiatt performed the work, and the cost or expense so incurred was, by order of the board, assessed against all the lands within the district, in proportion to their assessment for the original construction of the system. The plaintiffs own tracts of land affected by this assessment, and bring this action to have the same adjudged invalid, and the lien thereof vacated and removed.

Hiatt was made a defendant, and by proper pleading he asked that his right to the agreed compensation be confirmed. The theory upon which plaintiffs demand relief is that the work actually contracted for and performed was not, in any proper sense of the term, a work of repair upon the existing system, but rather in the nature of an original or independent improvement, which the supervisors could not lawfully establish or order except upon notice to the property owners, and that they could not lawfully contract for its construction, except upon due advertisement, and upon competitive bids. And this, in brief, is what we understand to be the central proposition upon which the result of this litigation turns.

1. DRAINS: establishment and maintenance: repairs: notice.

The trial court, after hearing the evidence, entered a decree adjudging the equities to be with defendants; that the board of supervisors had complied with the law in letting the contract to Hiatt; and that Hiatt had performed his part of the agreement, and was entitled to a compliance with such contract on the part of the board of supervisors and the county auditor.

To ascertain the nature of the work contemplated, we turn to the written contract entered into with Hiatt, and find it there recited that he agreed "to deepen, clean, re-

open, and repair said Drainage District No. 29 from Station
Zero to Station 37 in the manner and to the proportionate
depth and width as specified in the report of W. B. War-
rington, filed March 11, 1911; and from Station 37 to Sta-
tion 87; from Station 87 to Station 170; from Station 170
to Station 250; the above approximating about 35,168
yards, herein called the lower end of said district; also, in
addition to the above work in the lower end of the district,
the second party agrees to clean, reopen, and repair Branch
A from Station Zero to Station 23  *  *  *  approximating
936 cubic yards  *  *  *  and to clean, reopen, deepen,
and repair said drainage improvement from Station 402 to
Station 500, approximating about 7,317 cubic yards, and
herein called the upper end of said district." Other provi-
sions of the writing relate to matters of detail, not bearing
materially upon the issues in the case.

The engineer's report and recommendation, upon which
the board acted in letting the contract, do not appear to be
embodied in the record; and, the engineer making it being
since deceased, we do not have the advantage of his testi-
mony; but it may be presumed that the contract as made
with Hiatt is in substantial accord with such recommen-
dation. The work was done under the supervision of the
county's engineer; and the testimony tends to show that,
in so doing, the contractor not only took out the sediment
with which the ditches had, to a greater or less extent, be-
come filled or obstructed, but, under the direction of the
engineer, or in pursuance of the plans furnished by him,
the contractor also, in certain places, increased the depth
of the excavation below its original grade, and in other
places sought to insure greater permanency of the banks of
the ditch by increasing their slope, and to that extent in-
creased the original width of the channel. There is also evi-
dence of some original excavation at the outlet.

It further appears that the contractor extended an ex-

cavation beyond the district limits a short distance, in order to facilitate the successful operation of the drainage system; but for this work, he testifies that he neither asked nor received compensation, and his statement does not appear to be disputed.

The witnesses generally agree that the ditches had become filled and obstructed to a degree rendering it necessary, or at least appropriate, that they should be cleaned out and repaired, if they were to be of real benefit to the lands of the district; and it is also reasonably certain that, when this work was completed, the ditches were, in part at least, somewhat deeper and wider than they were as originally constructed. No witness undertakes to say that the work done was uncalled for, or did not constitute a substantial betterment of the drainage system; but there is some evidence to the effect that the compensation to the contractor, as fixed in the agreement, was in excess of its fair value. The charge in the plaintiff's petition, and repeated in argument, that the work contracted for and done included a lengthening or extension of the ditch or ditches beyond their original dimensions, is not justified by the record; but, as we have said, it is to be conceded that the channels were not only reopened, cleaned, and emptied of silt and obstructions, but were, to some extent, materially deepened.

Such being, in part, the nature of the work contracted for and done, the material legal inquiry is whether, under the provisions of the statute, the board was authorized to undertake it without notice to the property owners, or to let the contract except upon competitive bidding.

If we will bear in mind that this work here done was in a drainage district, the organization of which had been perfected for several years, and that the drainage improvements contemplated in such organization had been fully completed long before the extension of this contract to re-

open, clean, and deepen the ditches, there need be no doubt or confusion as to the effect of the statute. The misunderstanding which seems to have existed concerning the provisions of Sections 1989-a11 and 1989-a21, Code Supplement, 1913, and to which, perhaps, a decision or two by this court has contributed, has arisen by failure to notice the distinction between the conditions calling for their application.

The first of these sections, 1989-a11, prescribes the procedure to be followed when, after the establishment of the district, *"and before the completion of the drainage improvements therein,"* it becomes apparent that a levee or drain should be enlarged, deepened, or otherwise changed, and provides that the board may authorize such change by resolution, subject to the provision that, if such change operates to increase the burden upon any property, notice of the proposed alteration shall be given the owner or owners so affected, and opportunity afforded them to present their claims for damages.

But, by the other section, 1989-a21, provision is made for the maintenance and care of the drainage system after the *"district shall have been established and the improvement constructed."* For that purpose, it is there provided that the improvement "shall at all times be under the control and supervision of the board of supervisors and it shall be the duty of the board to *keep the same in repair* and for that purpose they may cause the same to be *enlarged, reopened, deepened, widened, straightened or lengthened* for a better outlet." The cost of such repairs and changes is to be paid from the drainage fund of the district or by assessing it upon the lands in the same proportion that the cost of the original construction was assessed, except where additional right of way is taken; and in *such* case, the board must proceed as the statute provides for establishing an original improvement.

The reason for the distinction made by these sections is quite obvious. The first prevents the acquiring of any undue advantage over the property owners in the establishment of a district, by laying out a plan of improvement to which they may be willing to accede, and for which they may claim little or no damage, and then, by a mere resolution of the board, increasing their burden by adopting a materially different plan, to which they have had no opportunity to object. A very different situation is presented, however, where a district has been fully organized, and a system of drainage has been established and completed.

In the nature of things, and especially with open ditches having but slight natural slopes or grades, the duty should rest upon some responsible officer or board to see that they are kept open and in repair, and if they do not work efficiently, to cause the removal of the difficulty, if practicable.

This responsibility, Section 1989-a21 places upon the board of supervisors. The duty is one which is continuous, calling for supervision from day to day and month to month, or, in the language of the statute, "at all times." The work to be done may involve considerable expense, or it may be a succession of petty repairs, each of which is comparatively inexpensive. To require that in each case the board must advertise the job and seek the lowest bidder would be to hamper and prevent its efficient action, without any corresponding benefit to the public. It is not at all strange that a drainage system, once completed and put to practical use, should develop, here and there, a defect; and if such defect can be remedied or the efficiency of the system be increased by lowering the bottom of the channel at some point, or by widening the cut in another place, the right of the board to which the duty of care and maintenance is committed, to do what ought to be done to that end, ought not to be unreasonably restricted.

The contract between the board and Hiatt, to which the plaintiffs object, appears to be fairly and clearly within the scope of the power and responsibility conferred by this section. Even if the terms of the contract be as broad and comprehensive as plaintiffs say they are, they are still not in excess of the authority expressly given to "enlarge, reopen, deepen, widen, and straighten" the completed ditches, for the purpose of keeping them in repair and maintaining them in efficient working order. The statute imposes no duty to give notice in advance of each separate work of repair, or to advertise the same for competitive bids, except, perhaps, as may be implied in the proviso at the end of the section, which seems to recognize such necessity where additional right of way is to be taken; and this reservation is sufficient, in our judgment, to obviate any possible objection on constitutional grounds.

Appellants place chief reliance upon the decision by the court in *Lade v. Board of Supervisors*, 183 Iowa 1026; and in candor we must say that, if we are to construe some of the language there employed according to its literal terms, as a statement of the law as it now exists, it is out of harmony with the views hereinbefore expressed. For example, the opinion in the cited case says that:

"While it is true the board of supervisors has authority to have an existing ditch widened and deepened and make the assessment for the costs thereof, this may be done only if notice be given; and none was given. See Code Supplement, 1907, Section 1989-a11, as amended by Section 10, Chapter 118, Acts of the Thirty-third General Assembly, and Section 4, Chapter 87, Acts of the Thirty-fourth General Assembly."

Now, if the assessment which was there under consideration had been made while the amendment provided by Section 10 of Chapter 118 of the Acts of the Thirty-third

General Assembly was in force, the statement as to the effect of such amendment to invalidate that assessment need not be questioned; but, by a later amendment, which is embodied in the present Code Supplement of 1913, the section referred to, 1989-a11, is expressly limited to changes sought to be effected in the dimensions and location of the ditch *after* the district is established, "and *before* the completion of the drainage improvements therein," and does not in any manner supersede Section 1989-a21, Code Supplement, 1913, or limit or control the authority which that section vests in the supervisors.

2. DRAINS: establishment and maintenance: enlarging ditch.

Complaint is further made that all of the lands in the district were not benefited alike or in the same porportion, and the assessments are, therefore, inequitable. There is no merit in the objection. The drainage system, once established and completed, is an improvement from which the district as a whole is conclusively presumed to receive a benefit, and the statute expressly provides for the manner of the assessment of the expense of repair, and the law in this respect appears to have been followed. A public school-house, for example, may be of greater actual benefit to some property owners than to others; but the expenses for its construction, maintenance, and repair are chargeable in equal proportion to all the property within the district boundaries.

3. DRAINS: assessment of benefits: objections.

4. DRAINS: assessment of benefits: presumptions.

Nothing here said in any manner detracts from the right of the owner of property within the drainage district to object to an assessment for a new and independent drainage improvement which is sought to be imposed under the guise of a mere work of repair, such as is authorized by Section 1989-a21. That subject we have treated in the case of *Chicago & N. W. R. Co. v. Board of Supervisors,* 184

Iowa 590, and it need not here be further dwelt upon.

The conclusions we have announced appear to us to be inevitable, unless we are to judicially neutralize the plainly expressed will of the legislature. The decision of the trial court is, therefore,—*Affirmed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.