FRANK MEYERHOLZ et al., Appellants, v. BOARD OF SUPERVISORS
OF LOUISA COUNTY, Appellees.

**DRAINS: Repairs—Scope of Former Statute.** Section 1989-a11, Code
Supp., 1913 (not retained in the Code of 1924) did not embrace
within the scope of its operations a levee improvement commenced
some ten years after the completion of the original improvement
and consisting, in the main, of the closing of breaks and a general
strengthening against weaknesses caused by erosion.

**DRAINS: Repairs—Assessments Without Notice.** Notice of a proposed
assessment for rehabilitating a long established levee was not re-
quired, either under Sec. 1989 a21, Code Supp., 1913, or under Secs.
1 and 2, Ch. 302, 37th G. A.; no change in location or lengthening·
being made, no new lands being taken, and the work consisting,
in the main, of the closing of breaks and a general strengthening
against weaknesses caused by erosion.

**DRAINS: Repairs—Applicability of Statute.** Sec. 7554, Code of 1924
(Sec. 1989-a25, Code Supp., 1913) has no possible application to a
work which consisted in the rehabilitation of a long established
levee; no change in location or lengthening being made, no new
lands being taken, and the work consisting, in the main, of the
closing of breaks and a general strengthening against weaknesses
caused by erosion.

Headnote 1:   36 C. J. p. 1003.   Headnote 2:   36 C. J. p. 1003.   Head-
note 3:   36 C. J. p. 1003.

*Appeal from Louisa District Court.*—JAMES D. SMYTH, Judge.

JUNE 25, 1925.

ACTION to enjoin the board of supervisors from levying as-
sessments to pay for certain work done in Levee District No. 11,
Louisa County, and to prevent the issuance of bonds to pay cer-
tain outstanding warrants of said district.   The plaintiffs are
landowners within the district.   The trial court denied the relief
sought, and dismissed the plaintiffs' petition; and they appeal.—
*Affirmed.*

*Seerley & Clark* and *Holsteen & Hill,* for appellants.

*H. O. Weaver* and *Arthur Springer,* for appellees.

FAVILLE, C. J.—Levee District No. 11 was established in 1909. The district embraces about 4,000 acres of land, and the levee as constructed is between six and seven miles in length. In 1912, the levee broke in three places. It again broke in the year 1915 and in 1916. In June, 1918, the levee broke again. Various meetings were held in 1918 and thereafter, by the board of supervisors and also by the landowners within the levee district. A committee was appointed by the landowners to co-operate with the board of supervisors in determining the best method to pursue to make the levee effective and protect the lands of the district from overflow and flood. A sand pump was purchased and used, but the work did not prove satisfactory; and eventually the board of supervisors advertised for bids for the work to be done. The bids received were not satisfactory, to the board and the landowners, and three different advertisements were made, and a contract was finally let to the Wapello Construction Company for doing the work. The construction company proceeded under this contract for approximately two years, and moved 89,980 cubic yards in the work. In May, 1921, the board of supervisors passed a resolution relative to the issuance of bonds to pay for the work done under the contract with the construction company. Notices of the proposed assessment for the work were given, as provided by law; objections were filed to the proposed assessment; a hearing was had thereon; and an appeal from the order of the board of supervisors was taken to the district court, where the appeals were eventually dismissed. Thereafter this suit was commenced, to enjoin the collection of the assessments and the issuance of bonds.

It is the contention of appellants that the contract with the Wapello Construction Company was without authority of law, and therefore void, and that the board of supervisors should be enjoined from levying assessments on the lands of appellants to pay for the work done under said contract.

Appellants' contention that the contract is void, and that their lands are not subject to assessment to pay for the work

done under said contract, is based primarily upon two propositions: First, that the work undertaken under the contract was of the character that required notice to the landowners within the drainage district, and that no notice was given; and secondly, that there was fraud in the measurements and computations of yardage under said contract, and that, in any event, appellants should not be subjected to assessment to pay the amount claimed thereunder.

I.   The levee in question was constructed about 1909. It was approximately ten years thereafter when the proceedings that are complained of were instituted. The evidence shows that the levee broke several times, and that it had settled and the walls had washed, and that in its condition in 1918 it was inadequate to effectuate its purpose of preventing overflow.

1. DRAINS: repairs: scope of former statute.

The levee district was established under Chapter 68, Acts of the Thirtieth General Assembly, which, with certain amendments, appears as Section 1989-a1 *et seq.*, Code Supplement, 1913. Appellants contend that the proceedings under which the contract involved in this case was let, were had under Section 1989-a11, Code Supplement, 1913.

Chapter 68, Acts of the Thirtieth General Assembly, was repealed and re-enacted by Section 10, Chapter 118, Acts of the Thirty-third General Assembly (1909), and said Section 10 was amended by Section 4, Chapter 87, Acts of the Thirty-fourth General Assembly (1911).

We have had said Section 1989-a11 before us a number of times, and have held that said section refers to changes sought to be effected in dimensions and location of a levee or a drainage ditch, after the establishment of the district and *before* the completion of the improvement therein, and that it does not conflict with nor supersede Section 1989-a21, Code Supplement, 1913, which relates to repairs upon a completed improvement. The matter is fully discussed and determined in *Breiholz v. Board of Supervisors*, 186 Iowa 1147. See, also, *Nervig v. Joint Boards of Supervisors*, 193 Iowa 909; *Shaw v. Board of Supervisors*, 195 Iowa 545; *Walker v. Joint Drain. Dist.*, 197 Iowa 351.

If the work in the instant case was of the kind and character contemplated by Section 1989-a11, then notice was re-

quired. before the lands within the district could be assessed for the improvement. We are clearly of the opinion, however, that the work in question cannot be said to have been work undertaken or authorized by Section 1989-a11. This work was not undertaken before the completion of the improvement. The improvement had been constructed and maintained for something like ten years before the work in question was undertaken. The work done did not contemplate the taking of any new lands, nor did it change the location of the improvement in any way.

It is contended that the work in question was repair work, within the meaning and contemplation of Section 1989-a21; and also that, in any event, the work was of the character provided

2. DRAINS: re-
pairs: assess-
ments without
notice.

for by Sections 1 and 2, Chapter 302, Acts of the Thirty-seventh General Assembly, which are as follows:

"Section 1. In any levee or drainage district which maintains a levee, the board or boards of supervisors shall have the right and power to keep up and maintain any such levees, ditches or drains, established under Chapter 2, Title 10, of the Code and amendments thereto, or in case of washout or other injury to enlarge or strengthen or increase the height of the same as may in their judgment be required, provided, however, that said work shall only be done or changes made upon the recommendation of a competent engineer appointed by said board, and said board or boards of supervisors are empowered to levy the expense thereof upon the real estate within said drainage or levee district.

"Sec. 2. If after the ordering of said repairs or improvements and before the completion thereof, it shall become apparent that the same should be enlarged, strengthened or otherwise changed or alteration in the location should be made for the better service thereof, said board or boards may by resolution authorize such change or changes in said improvement as the engineer may recommend, provided that when any changes are made, all persons whose lands shall be taken shall have been given notice as at the original establishment of said district and have the right to be heard as to damages and appeal as in said act or acts provided at the original establishment."

Appellants contend that, whether the work was done under

Section 1989-a21 or under said Sections 1 and 2, Chapter 302, Acts of the Thirty-seventh General Assembly, they were entitled to notice before their lands could be subject to assessment. This contention is based upon a clause in Section 1989-a11, as follows:

"Provided that, whenever any change or changes are made, either under this section *or under any other section of this chapter,* all persons whose land shall be taken or whose assessments shall be increased thereby shall first have been given like notices."

It is not true, as contended by appellants, that no work of *any* kind can be done under Section 1989-a21 without notice to landowners. We have so held in the *Breiholz* case, supra, which case was affirmed by the Supreme Court of the United States. *Breiholz v. Board of Supervisors,* 257 U. S. 118. What particular work, if any, may be done under Section 1989-a21 that would require notice to landowners, it is not necessary for us to determine in this case, and we make no pronouncement in regard thereto. We adhere to the rule of the *Breiholz* case regarding work done under Section 1989-a21 that may properly be regarded as repairs to an existing and completed improvement. See *Walker v. Joint Drain. Dist.,* supra.

At this point, the question therefore resolves itself into a fact question as to whether or not the character of the work done in the instant case was properly repair work on an existing improvement, within the meaning of Section 1989-a21. If it was, then the work could be undertaken and the assessments in payment thereof levied without previous notice to the landowners.

An examination of the record leads us to the conclusion that the work in the instant case was all work that is properly classified under the term "repair," within the meaning and contemplation of Section 1989-a21.

The levee had been constructed, and, with minor repairs that had been made because of breaches therein, had stood for approximately ten years when the new work was undertaken. The levee had, of necessity, settled during this period of time, and had been subjected to erosion. There had been repeated breaks in the levee in the intervening years. The condition necessitated extensive repair. It is quite evident that the levee

had reached a state of deterioration where it was imperative that it be repaired and restored, in order to be of any practical efficiency or service to perform the work for which it was designed. No change was made in the location of the levee. It was not lengthened. No new lands were occupied. The obvious and sole purpose of the work was to strengthen the levee as built, and restore it so that it would adequately perform the function for which it was constructed. While the work was extensive and necessarily expensive, we think it was authorized as repair work under Section 1989-a21, and that no such "change" was made as required notice to landowners whose lands were within the levee district, which lands had already been classified and assessed.

In any event, we think that the work done in the instant case was expressly authorized by Sections 1 and 2, Chapter 302, Acts of the Thirty-seventh General Assembly. This statute was evidently enacted with specific reference to conditions that arise in levee districts and drainage districts which maintain a levee as a part of the improvement. The authorization is given under this chapter to meet such a situation as apparently arose in the instant case, where the levee had been subjected to washout, and it was necessary that repairs be made that were of a permanent, rather than a merely temporary, character. The authorization by this statute is that, "in case of washout or other injury," the levee may be enlarged or strengthened, or the height thereof increased, as may, in the judgment of the board, be required, provided that the work is done upon the recommendation of a competent engineer; and that the expense of such repair may be levied upon the real estate within the established levee district. By Section 2 it is expressly provided that:

"When any changes are made, all persons whose lands shall be taken shall have been given notice as at the original establishment of said district and have the right to be heard."

The provisions of this section are consistent with the provisions of Section 1989-a11. The one refers to a "change" *before* completion; the other to a "change" *after* completion. The evident purpose of the provisions of this chapter was to give authority to a board of supervisors to do the exact thing that appears to have been done in the case at bar. A levee was

constructed, for the purpose of saving a district of 4,000 acres of land from the overflow of a river. The levee had but one purpose, and that was to hold back and restrain the high waters of the river. The levee was constructed upon certain lands adjacent to the river for a distance of approximately six miles. It is obvious that a levee, like a chain, is no stronger than its weakest part. It is a matter of common knowledge that a breach in the levee, or a washout at one point, may prove utterly disastrous to the farm lands protected by the levee. The purpose of the statute in question was to provide for repairs caused by ''washout or other injury,'' so as to make the levee efficient for the purpose for which it was constructed. It is undoubtedly true that the board of supervisors might undertake work, under the guise of a repair of a levee, which would be, in effect, an entirely new improvement, and which would require notice to be given, under Section 2, to all persons whose land would be taken thereby. The location of the levee might be materially changed. New lands might be taken. The levee might be extended in length. It is not an easy matter to draw the definite line of demarcation between work that may properly be classified as ''repair work,'' and work that might be classified as a ''new improvement;'' but from an examination of the record in this case we are constrained to hold that the work which was undertaken, and for which the lands of appellants are subject to assessment, was properly repair work, within the contemplation of said Chapter 302, and that the lands of appellants could be assessed therefor without any new notice. As before stated, the work was confined to work upon the original levee, as constructed. The work was done under the recommendation of a competent engineer, as the statute provides; and the recommendation of the engineer was, in effect, the suggestion of a method of procedure by which the levee should be repaired and restored. It is true that the work was extensive in its scope, but this necessarily resulted from the deteriorated and injured condition of the original improvement.

The question turns upon a question of fact as to whether the work actually done may properly be called ''repair work,'' as distinguished from a ''new improvement'' or a ''change'' which required notice, to give validity to the action of the

board of supervisors. We reach the conclusion from the record that the work was properly repair work, and that the board of supervisors was authorized, under the statutes above cited, to cause the same to be done and to assess the cost thereof against the lands lying within the levee district without giving notice, before letting said work, to the landowners whose lands had already been included within the levee district, and whose lands had been previously classified for assessment.

II. Appellants contend that the facts in the case bring the proceedings under the provisions of Section 1989-a25, Code Supplement, 1913. Said section is as follows:

"If any levee, drainage district or improvement heretofore established, either by legal proceedings or by private parties, or which may hereafter be established, shall prove insufficient to protect or drain all of the lands necessarily tributary thereto, the board of supervisors, upon petition therefor as for the establishment of an original levee or drainage district, shall have the power and authority to establish a new levee or drainage district covering and including such old district or improvement, together with any additional lands deemed necessary; and whenever a new district shall be established as contemplated in this section and the new improvement shall extend into or along the former improvement, the commissioners of classification and benefits shall take into consideration the value of such old improvement in the construction of the new improvement and credit the same to the parties owning the old improvement as their interests may appear."

3. DRAINS: repairs: applicability of statute.

Said section is not applicable to the instant case. There is no attempt here "to establish a new levee or drainage district covering and including such old district or improvement, together with any additional lands deemed necessary." No additional lands were deemed necessary. No change was made in the levee district. No new lands were taken. No change was made in the location of the improvement. Section 1989-a25 has no application to the facts in the instant case.

III. Appellants seek an injunction because of a claim of fraud in the amount of yardage which it is claimed was moved by the construction company, and payment for which is to be

made by assessments upon the lands of appellants and other lands in the district.

We do not find any material disagreement as to the proper scientific manner of calculating the amount of yardage used. It appears that the engineer employed by appellants conceded that he made an erroneous calculation as to at least part of the yardage. We find no evidence of any fraud or such gross mistake as would warrant a court of equity in enjoining the payment of the amount reported by the engineer and allowed by the board of supervisors.

We find no error in the record requiring any interference on our part, and the decree appealed from is, therefore,— *Affirmed.*

. EVANS, ARTHUR, and ALBERT, JJ., concur.