BOARD OF SUPERVISORS OF HAMILTON COUNTY et al., Appellees;
v. C. E. PAINE et al., Appellants.

DRAINS: Repair—Erosion of Banks and Depositing of Silt. The authority of the board of supervisors, under Sec. 1989-a21, Code Supp., 1913, to keep a constructed drainage improvement ''in repair'' embraced the authority to contract for the placing of pipes through the waste banks in order to prevent erosion of the banks and the depositing of silt in the ditch.

DRAINS: Repair—''Constructed'' Drain Defined. A drainage improvement is *constructed*, within the meaning of a statute which authorizes the repair of a ''constructed'' drain, whenever the physical work is completed and the governing body has accepted the same, even though a supplemental improvement governed by a different contract remains unfinished.

Headnote 1: 19 C. J. p. 700.   Headnote 2: 19 C. J. p. 700.

*Appeal from Hamilton District Court.*—SHERWOOD A. CLOCK,
Judge.

NOVEMBER 23, 1926.

REHEARING DENIED MARCH 11, 1927.

Action in equity, to have certain drainage warrants declared void, and to enjoin their payment. From a decree for plaintiffs the defendants prosecute this appeal.—*Reversed.*

*Kelleher & Mitchell* and *Hughes, Taylor & O'Brien,* for appellants.

*Burnstedt & Hemingway* and *Mitchell, Files & Mulholland,* for appellees.

VERMILION, J.—Prior to 1917, a drainage district had been established in Webster County, consisting, in part, of an open ditch near the boundary between that and Hamilton County. In that year, the boards of supervisors of the two counties, acting as a joint board, established a joint drainage district. The improvement, as so contemplated and constructed, consisted of the deepening of a portion of the open ditch in Webster County, that had been constructed by the original district in that county, and its use as an outlet, and the construction of tiled ditches in Hamilton County, connecting with such outlet. Separate contracts were let for deepening the open ditch and for the laying of the tile. The work of deepening the old ditch in Webster County was completed in 1918, and on October 26, 1918, the engineer in charge of the work reported to the joint board the completion of the open-work section of the drain, in accordance with the plans and specifications. This report was approved by action of the joint board on October 28, 1918. With the proceedings so far, this litigation has no direct concern.

1. DRAINS: repair: erosion of banks and depositing of silt.

In November and December of 1918, the appellant Paine, under an oral contract with a committee of the joint board, put in certain corrugated iron pipes, to carry the surface water through the spoil banks of the open ditch, and also at the ends of certain tiled drains that had discharged into the ditch, as originally constructed, and which had been disturbed by the deepening of the ditch. The pipe was furnished by the district,

and the work performed by Paine was only the hauling and installing of the pipe; and this work was completed before December 11, 1918.

On the last named date, the estimates of the engineer of the work done by Paine were before the board, and, on that date, a written contract was executed by the chairman of the joint board and Paine, covering the work done by him. This contract bears date October 20, 1918, but the testimony is undisputed that it was in fact executed on December 11, 1918, and after the work was completed. On the same date, warrants were issued by the auditor of Webster County to Paine for the work done by him, as shown by the estimates of the engineer, and at the prices specified in such written contract. Paine is still the holder of one of these warrants, and the others have been assigned, and are now held by others of the defendants and appellants.

This action was brought by the boards of supervisors of Webster and Hamilton Counties against the present holders of the warrants so issued to Paine and against the treasurers and auditors of the respective counties, asking that the warrants be decreed void, and that they be canceled, and that the county treasurers be enjoined from paying them.

The question is raised, although not strenuously pressed, of the right of the plaintiffs to maintain the action. Our conclusion on the merits makes it unnecessary that we determine that question.

There is no dispute over the making of the oral agreement under which the work was done, and no claim that the contract was not fully and strictly performed by Paine, or that the warrants are invalid merely because the written contract was executed after the completion of the work.

I. There is no allegation in the petition of actual fraud on the part of either Paine or the joint board, nor is such a claim made here. The only allegation or contention in that respect is that the price was excessive, and that, for that reason, the contract was a fraud on the landowners subject to assessment. No owner of land subject to assessment is objecting, or, so far as the record discloses, has ever made formal objection, to the assessment on that ground.

There was testimony tending to show that the price stipulated in the contract was grossly excessive, and represented an

unreasonably large profit. There was also testimony that it was no higher than had been paid for like work in Webster and near-by counties about the same time, where the contracts had been let on competitive bids, and was the same as Paine received under another contract for such work in Webster County which was so let, and where there had been a number of bidders. There was evidence of some difficulties peculiar to the work in question. Some explanation of the situation may be found in the fact that the time, just at the close of the war, was one of considerable extravagance in the making of public improvements, great scarcity of labor, extremely high prices, and enormous profits.

However, we do not understand it to be seriously contended that, if the joint board acted within the authority conferred upon it by statute in making the contract, payment of the contract price could be avoided after full performance by Paine, merely because it was a bad contract for the district and the price was excessive.

II. The contention of appellees is, in the final analysis, that the joint board was not authorized by Section 1989-a21, Code Supplement of 1913, the statute then in force, to contract for the work done by Paine, and that the only authority for such work was to be found in Section 1989-a11, and that there was a failure to comply with the provisions of the latter section, in that the work was not recommended by the engineer of the joint drainage district; that it was not authorized by resolution of the joint board; that it increased, and was intended to increase, the assessment against the lands in the district, and no notice was given the property owners; that there was no advertisement for bids for such work, and no opportunity for competitive bidding thereon; and that there were no plans and specifications for the work.

Section 1989-a11 is as follows:

"If, after the establishment of said district, and before the completion of the drainage improvements therein, it shall become apparent that a levee or drain should be enlarged, deepened or otherwise changed or that a change or alteration in the location should be made for the better service thereof, said board may by resolution authorize such change or changes in the said improvement as the engineer shall recommend; provided that,

whenever any change or changes are made either under this section or under any other section of this chapter, all persons whose land shall be taken or whose assessments shall be increased thereby shall first have been given like notices as provided in Section 1989-a3 of this chapter, and shall have like opportunity to file claims for damages, as provided for in Section 1989-a4 of this chapter, or file objection to such assessment as provided in Section 1989-a12 of this chapter, as the case may be, and like opportunity to appeal from the action of the board as provided in Section 1989-a6 of this chapter, or Section 1989-a14 of this chapter, as the case may be.''

Section 1989-a21 provides:

''Whenever any levee or drainage district shall have been established and the improvement constructed as in this act provided, the same shall at all times be under the control and supervision of the board of supervisors and it shall be the duty of the board to keep the same in repair and for that purpose they may cause the same to be enlarged, reopened, deepened, widened, straightened or lengthened for a better outlet, and they may change or enlarge the same or cause all or any part thereof to be converted into a closed drain when considered for the best interests of the public rights affected thereby. The cost of such repairs or change shall be paid by the board from the drainage fund of said levee or drainage district, or by assessing and levying the cost of such change or repair upon the lands in the same proportion that the original expenses and cost of construction were levied and assessed, except where additional right of way is required or additional lands affected thereby, in either of which cases the board shall proceed as hereinbefore provided; provided, however, that if the repair is made necessary by the act or negligence of the owner of any land through which such improvement is constructed or by the act, or the negligence of his agent or employee, or if the same is filled and obstructed by the cattle, hogs or other stock of such owner, employee or agent, then the cost thereof shall be assessed and levied against the lands of such owner alone.''

We held, in *Breiholz v. Board of Supervisors*, 186 Iowa 1147, that, where the work done came under the provisions of Section 1989-a21, there was no necessity to give notice to the property owners, or to advertise for competitive bids; and that that sec-

.tion expressly placed upon the board the duty of supervision and repair of the completed improvement. Neither the recommendation of an engineer nor the preparation of plans and specifications is by that section made a prerequisite to the action of the board in performing the duty so placed upon it. See *Breiholz v. Board of Supervisors,* 257 U. S. 118 (66 L. Ed. 159); *Nervig v. Joint Boards of Supervisors,* 193 Iowa 909; *Shaw v. Board of Supervisors,* 195 Iowa 545; *Walker v. Joint Drainage Dist.,* 197 Iowa 351; and *Meyerholz v. Board of Supervisors,* 200 Iowa 237.

The contention that the board had no authority to contract for the work performed by Paine under the provisions of Section 1989-a21 is predicated on two propositions. One has to do with the situation or condition of the improvement at the time the contract was made, and the other with the character of the work done under it:

. . III. It is said that the improvement had not been "constructed," within the meaning of Section 1989-a21, at the time the contract was entered into and the work done, because the separate contract for the laying of tile had not then been completed.

The laying of tile in the joint district was not completed until in January, 1921, or over two years after the open ditch, in connection with which alone the work under the Paine contract was done, had been completed and accepted by the joint board. Section 1989-a21 gave authority to keep the improvement in repair, when the district had been established and the "improvement constructed." It is true, the whole improvement contemplated had not been completed. But the open ditch was not only constructed under a separate contract, but constituted, in a sense, a separate and distinct part of the whole improvement. It had a dual function and purpose in the newly established district. It was not only designed as an outlet for the new tiled ditches to be constructed, but it continued to afford drainage for the contiguous land. It was completed and accepted by the joint board. It was then in operation as an outlet for the tile draining the adjacent land, and performing part of the function which it was contemplated it should perform. Certainly, as to this land, and to this extent, it was completed,—an improvement constructed.

2. DRAINS: repair: "constructed" drain defined.

The completion of the contemplated tiled drains added nothing to the open ditch in the way of construction of the latter, but only increased its use. It was as complete as an improvement, so far as construction was concerned, before the completion of the tiled drains as after.

Furthermore, the separate contract for its construction having been performed and the ditch accepted, the responsibility of the contractor for its condition was at an end. Thereafter, the responsibility for the condition of the ditch and its state of repair rested solely upon the joint board, or its agents. There was no one else charged with that duty. But it is clear, from the testimony as to the manner in which an open ditch would be affected by the erosion of its banks and the deposit of silt, that its effectiveness, not only in the general system of drainage of the entire district, but as a drain for the land already served by it, might have been seriously impaired, or even destroyed, before the new tiled drains would be completed, unless measures of prevention were taken, or proper repairs made.

The question of the right, under Section 1989-a21, to make repairs is not to be determined by the extent or cost of the work. If, during the three years following the completion and acceptance of the ditch and the putting of it to part of the use for which it was intended, the joint board had no authority to keep it in repair, under the provisions of that section, it could not thereunder do anything whatever in that respect, but must, even for the most minor and trivial repair, proceed, under Section 1989-a11, with the same formality as required for the original construction of the improvement. We are not prepared to say —nor do we think either the letter or the spirit of the statute so requires—that the joint board, after the ditch was completed, accepted, and in use, was without authority to keep it in repair, under Section 1989-a21. We hold that it was then a completed —a "constructed"—improvement, within the meaning of that section. This conclusion is not in conflict with anything said in the *Breiholz* or *Meyerholz* cases, supra.

IV. It is contended that the work provided for in the Paine contract was not of the character contemplated by Section 1989-a21.

That section provides that it "shall be the duty of the

·board to·keep'' the improvement "in. repair, and for that pur-
pose·they may cause the same to be enlarged,·reopened, deep-
ened, widened, straightened, or lengthened for a better outlet,
and they may change or enlarge the same or cause all or any
part thereof to be converted into a closed drain when considered
for the best interests of the public rights affected thereby."

·   :·The authority there given was not merely to repair, but to
*keep. in repair.* We have said that to repair is to "restore to a
sound or good state, after .decay, waste, injury, or partial de-
..struction." *Walker v. Dwelle,* 187 Iowa 1384. Obviously, then,
to·keep in·repair is·to keep in a sound or good state, without
such injury or partial destruction. To keep in repair is to keep
from getting out of repair. Where the authority is to keep a
·thing.in repair, it cannot be said that it must be out of repair
.before anything can be·done under the authority. .   '   .

·· :·The evidence shows that the ditch was originally· dug, and
was deepened by depositing the excavated dirt in spoil banks
:·along its sides; that.these spoil banks would prevent the surface
water on the adjoining land from entering the ditch, except
where·there were openings in the bank; that, if surface water
was allowed to enter through such openings,· whether made by
the water itself· or otherwise, the soil would·be eroded, and
.ditches would be made, extending latterly from the open ditch
into the land;·that, in the process of deepening the ditch, the
outlets of tiled drains previously constructed and discharging
.into it were. disturbed; and that this would result in a progres-
sive erosion of the banks as, under the influence of the water,
the tile was further exposed; that from these sources silt would
be deposited in the ditch, impairing its effectiveness as a drain
and as an outlet of the tiled drains discharging into it. The
work done under the Paine contract was the placing of corru-
.gated iron pipes at suitable places, and extending from the sur-
face of the ground back of the spoil banks through or under the
spoil banks into the ditch, to carry the surface water back of
.the banks into the ditch without erosion of the land or the spoil
banks, and the placing of such pipes as outlets for the tiled
drains .discharging into the ditch. The effectiveness of these
measures to prevent the·erosion that would otherwise occur,
with the resultant gradual filling up of the ditch, is not ques-
·tioned. .

The authority of the joint board, under Section 1989-a21, to repair the ditch by deepening it and removing deposits of silt cannot be questioned. When the authority of the board is to keep the ditch in repair, we are of the opinion that the taking of effective precautions to prevent erosion of its banks and the deposit of silt in its channel is not beyond the power given.

Whether a particular work constitutes a repair, under the provisions of Section 1989-a21, does not depend on the magnitude or cost of the work. *Meyerholz v. Board of Supervisors,* supra. If there was authority, under that section, to keep the ditch in repair by preventing threatened erosion of its banks at one point, there was authority to take the same precaution at other and all points where like injury was liable to occur.

We are of the opinion that the work done under the Paine contract was such as was authorized by Section 1989-a21, and that the warrants issued therefor were valid. It follows that the decree below must be, and is,—*Reversed.*

DE GRAFF, C. J., and STEVENS and ALBERT, JJ., concur.

FAVILLE, J., not participating.